STATE OF NEW JERSEY, PLAINTIFF, v. ANDREW N.
GERARDO, ET ALS., DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

December 7, 1988.

*Charles R. Buckley,* Esq. Deputy Attorney General for the Plaintiff.

*Jack L. Cohen,* Esq. for Defendant Andrew N. Gerardo.

FEINBERG, J.S.C. (Temporarily Assigned On Recall)

The motion to be decided by this court is made by defendant Andrew Gerardo to suppress certain wiretap tapes on the grounds that they were improperly sealed as called for in *N.J.S.A.* 2A:156A–14. Under Indictment No. SGJ173–86–1(1) defendant is charged along with others of violation of this State's racketeering statute. The order permitting the wiretap in question was effective as of February 26, 1986. In accordance with *N.J.S.A.* 2A:156A–12(f), the order provided for not more than twenty days of interception.[1] The prosecution and defense dispute the expiration date of the order. The prosecution contends it expired March 18, 1986; the defense, March 17, 1986. For purposes of this opinion, it is irrelevant which day

---

[1] *N.J.S.A.* 2A:156A–12(f) provides in part: "In no case shall an order entered under this section authorize the interception of wire or oral communications for any period exceeding 20 days."

controls because here there was an "extension" order of March 19, 1986, dealing with an order and interception that had ended before the extension order was entered.

The issue to be decided is whether the extension order was effective so that the order of February 26 would not terminate after twenty days or whether the order of February 26 had expired due to the lapse between expiration and extension thus necessitating the tapes being sealed or being suppressed as evidence at trial. More broadly, the question is one of the need to seal tape recordings at the conclusion of a wiretap order which has been extended after a lapse of time.

*N.J.S.A.* 2A:156A–10 provides in part:

> Upon consideration of an application, the judge may enter an *ex parte* order ... authorizing the interception ... if the court determines on the basis of the facts submitted by the applicant that there is or was probable cause for belief that:
> f. In the case of an application, *other than a renewal or extension*, for an order to intercept a communication ... which was the subject of a previous order authorizing interception, the application is based upon new evidence or information different from and in addition to the evidence or information offered to support the prior order.... [emphasis added.]

In addition, judicial wiretap guidelines promulgated by the Administrative Office of the Courts direct that once a wiretap order has expired by the passage of the time limit in the order, for further interceptions to be permissible, a new application pursuant to *N.J.S.A.* 2A:156A–10(f) *shall be made unless a renewal application is submitted within seven days* of the expiration date of the order. Directive # 5–1987 of October 22, 1987.

It is clear from the statute that the effect of an application for a renewal or extension is that a prosecutor is faced with the relatively light burden of showing that the investigation continues, the conduct continues and the order should likewise continue. However, the legislature afforded a potential investigee certain protections by providing that where a renewal or extension is not involved, the application must be based on new or different additional evidence. It follows, therefore, that the

legislature believed that a lapse between the time of expiration and application for extension was significant.

Here, this court is faced with a novel issue which presents an analogous situation. A lapse of time between the expiration of the wiretap order, and the point at which tapes would be sealed by the issuing judge or an extension would become effective, is here at issue. In this situation, the key is affording a potential investigee protective measures due. This is manifested by avoiding the possibility of tape-tampering which is tantamount to preserving the integrity of the tapes. In conjunction with protecting potential investigees, such measures serve to protect the image of the judicial system itself by negating even the appearance of possible foul play.

The statutory and case law on the precise issue of sealing requirements in the event of a short lapse between expiration and "extension" is not unequivocal. *N.J.S.A.* 2A:156A–14 sets out in part:

> ... The recording shall be done in such a way as will protect it from editing or other alteration. *Immediately* upon the expiration of the order or extensions or renewals thereof, the tapes ... shall be transferred to the judge issuing the order and sealed under his direction.... The presence of the seal provided by this section, or a satisfactory explanation for its absence, shall be a *prerequisite for the disclosure* of the contents of any ... communication, or evidence derived therefrom.... [emphasis added.]

The import of the statute is two-fold. First, it is to protect the integrity of the tapes; and second, is to protect investigees from possible overreaching. The statute states that upon expiration of the order or any extension, the tapes must be immediately sealed. However, the statute fails to define what is meant by "immediately," and, therefore, the drafters' intent is less than clear.

Defendant cites *State v. Tanchalk,* 177 *N.J.Super.* 551 (App. Div.1981) in support of his contention that the tapes should have been sealed upon the expiration of the order making the lapse between the expiration date and the "extension" nothing more than a re-application, which this court notes requires a heavier burden be placed upon the prosecution, and not an

extension at all. However, *Tanchalk* is inapposite because there the surveillance was continuous and no lapse of time was involved. The Appellate Division there specifically reserved its judgment to the facts of that case. The court stated:

> We note that the extension order in this case began on the expiration date of the original order, making surveillance continuous. *We do not address the question of the need to seal tape recordings at the conclusion of a wiretap order which has been renewed after a lapse* of time. [*State v. Tanchalk,* 177 *N.J.Super.* at 555; emphasis added.]

*State v. Cerbo,* 152 *N.J.Super.* 30 (App.Div.1977), aff'd, 78 *N.J.* 595, (1979), involved a thirty-three day lag in sealing. The court held that since a delay in sealing is tantamount to the absence of a seal under *N.J.S.A.* 2A:156A–14, the statutory requirement that there be a satisfactory explanation for such "absence" is applicable to the delay in sealing. Further, that a delay in presenting tapes for sealing requires suppression unless there is a satisfactory explanation for the delay. Justice Handler, writing for the Court, stated that the provisions of *N.J.S.A.* 2A:156A–14 were not merely ministerial and that failure to turn over tapes immediately to the issuing judge for sealing was not merely a technical violation of the Wiretap Act. *State v. Cerbo,* 78 *N.J.* at 600. On the contrary, the court stated:

> It cannot be overstressed that the transfer and sealing requirements ... are an important component of the protective measures governing the conduct of wiretapping under the Wiretap Act. The significance of these particular safeguards is to be appreciated in the broader protective framework structured by the Wiretap Act, which calls for court involvement in and continuing judicial supervision of all aspects of wiretapping.... [at 602].

But this court recognized the admonition as expressed by the Appellate Division in *City of Newark v. County of Essex,* 160 *N.J.Super.* 105, 113 (1978), aff'd, 80 *N.J.* 143 (1979) which discussed the sensible and reasonable interpretations of the legislative intent:

> In arriving at our conclusion we have adopted the oft-cited rule of statutory construction, which holds that the purpose and reason for the legislation, considered as an integrated whole, should control rather than its literal terms. See *Loboda v. Clark Tp.,* 40 *N.J.* 424, 435 (1963); *Schierstead v. Brigantine,* 29 *N.J.* 220, 230–231 (1959); *Westinghouse Elec. Corp. v. Board of Review,* 25

N.J. 221, 226–227 (1957); *Palkoski v. Garcia,* 19 *N.J.* 175, 181 (1955); *Caputo v. The Best Foods,* 17 *N.J.* 259, 264 (1955).

In *Alexander v. N.J. Power & Light Co.,* 21 *N.J.* 373 (1956), the court aptly summarized the judicial function in construing legislative enactments:

The statute is to receive a reasonable construction, to serve the apparent legislative purpose. The inquiry in the final analysis is the true intention of the law; and, in the quest for the intention, the letter gives way to the rationale of the expression. The words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms. The particular words are to be made responsive to the essential principle of the law. When the reason of the regulation is general, though the provision is special, it has a general acceptance. The language is not to be given a rigid interpretation when it is apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the evident legislative design.

It, therefore, appears that the action of Judge Coburn in recognizing the application as a renewal or extension in accordance with the statute involved and the Judicial wiretap guidelines, this court does herewith deny the motion of the defendant.

NEW JERSEY SHORE BUILDERS ASSOCIATION, A NEW JERSEY NON–PROFIT CORPORATION, PLAINTIFF v. MAYOR AND TOWNSHIP COMMITTEE OF TOWNSHIP OF MIDDLETOWN, NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division Monmouth County

Decided March 13, 1989.